**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald Wayne SHANKS,**
**Defendant-Appellant.**

**No. 74–1697.**

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1975.

Decided July 8, 1975.

Charles H. Scruggs, Kokomo, Ind., for defendant-appellant.

John E. Hirschman, U. S. Atty., John L. Hudgins, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, STEVENS and DOYLE,* Circuit Judges.

William E. DOYLE, Circuit Judge.

Shanks was convicted of receiving, concealing and storing a stolen motor vehicle, a White semi-tractor, knowing the same to have been stolen, contrary to 18 U.S.C. § 2313. Shanks' co-defendant, Louis Horton, was also convicted, but the appeal is that of Shanks only.

A tandem axle tractor was stolen on August 24, 1973 from the White Truck factory branch at Cincinnati, Ohio. In early October 1973, Horton received a call from an unidentified person asking if he was interested in buying some equipment. Horton and Shanks were in the process of setting up a business, S & H Transport, and had been looking at wrecked trucks for about two years. Horton agreed to look at the equipment and met the caller at a truck stop in Logansport, Indiana. The man showed him the engine, transmission and a few other parts of a truck. These items were in the bed of another truck. Horton agreed to buy the "equipment" after viewing it. That evening, the man delivered the engine, transmission and the double axle rear end to Horton. The latter paid $3800 in cash. He received no bill of sale or other document evidencing the sale. On the same night or a few days later, Horton showed the parts to Shanks who agreed to pay his share of the price. They then arranged to buy a glider kit (front axle, cab and frame), into which the parts would be placed. This purchase was from a friend of Shanks, Wyman Kinderman. Kinderman knew a mechanic who was willing and able to install the parts in the kit. Arrangements were thereafter made through Kinderman with James Summers, in Lebanon, Indiana, to assemble the truck. Kinderman had the glider kit delivered to Summers; Horton brought the parts to Summers sometime in November. Summers started the assembling of the truck, but became suspicious because the engine looked newer than Horton had indicated. As a result, Summers contacted his attorney, who in turn contacted the FBI. The day after the FBI was contacted, on January 23, 1974, Agent Valentine went to Summers' shop. The engine, transmission and rear end were identified as parts of the tractor stolen in Cincinnati in August. The remainder of the original White truck has not been found. Nor has the person who sold the parts to Horton been identified or found.

Shank raises two questions on appeal:

1) Whether the White truck parts constituted a motor vehicle within the meaning of 18 U.S.C. §§ 2311 and 2313; and

* Circuit Judge William E. Doyle of the Tenth Circuit is sitting by designation.

2) Whether the evidence was sufficient to support his conviction.

Did the parts which were purchased constitute a motor vehicle within the meaning of the statute, 18 U.S.C. § 2313? The statute makes it unlawful to receive, conceal or store a motor vehicle which is a part of or which constitutes interstate commerce knowing it to have been stolen. Section 2311 defines a motor vehicle as including "an automobile, automobile truck, automobile wagon, motorcycle, or any other self-propelled vehicle designed for running on land but not on rails."

The trial court instructed the jury as to the statutory definition of a motor vehicle and then stated:

> You are further instructed that the purpose of the statute which these defendants are charged with violating is to eliminate the interstate traffic in stolen motor vehicles. This purpose cannot be frustrated by the dismantling of the parts of a motor vehicle which has been stolen. Thus, if you find beyond a reasonable doubt that the truck involved was stolen, the fact that it was dismantled and was no longer in the same precise condition as when it was stolen does not destroy its characterization as a motor vehicle.

The government relies on United States v. McKlemurry, 461 F.2d 651 (5th Cir. 1972) and United States v. Wallace, 254 F.Supp. 653 (E.D.Tenn.1965), aff'd, 361 F.2d 494 (6th Cir. 1966). The court in McKlemurry rejected defendant's argument that the vehicle involved was not a motor vehicle within the meaning of the act merely because at the time the car was recovered by the police it had no motor. The court said "To allow car thieves to escape prosecution by the simple device of removing the car's engine would eviscerate the Act and frustrate the intent of Congress." 461 F.2d at 653.

In Wallace, the defendant had purchased a wrecked automobile in Tennessee and had combined major parts of that car with major parts from a car stolen in Georgia. The rebuilt car was then sold. The trial court instructed the jury that it was necessary for a vehicle to have an engine, frame and wheels, and that the body alone could not constitute a motor vehicle. But it then went on to instruct that if major parts of the car defendant sold had been stolen, it was no defense that some of the parts were not stolen parts. The Sixth Circuit affirmed this without opinion.

The opinion in Wallace fails to make clear whether defendant was charged with transportation of a stolen vehicle under § 2312 or sale or receipt under § 2313. Nor does this decision bring out whether the defendant at any time had possession of the entire vehicle from which the stolen parts were obtained.

United States v. Bishop, 434 F.2d 1284 (6th Cir. 1970) is more authoritative. In that case the Sixth Circuit discouraged the reading of Wallace too broadly. In Bishop, and in a companion case, United States v. Bishop, 437 F.2d 97 (6th Cir. 1971), in which the first Bishop defendant's brother was involved, the court held that transportation or receipt or concealment of one part of a motor vehicle did not constitute a violation of the Dyer Act. In the Bishop cases a car had been stolen in Ohio on March 2, 1969. On March 21, 1969, the engine block was found in Kentucky in the home of Johnny Bishop and his father. The chassis was found, burned, about three miles away from the farm. In each case the court found possession of the engine block alone insufficient to justify conviction for transportation or receipt of a stolen "motor vehicle." But the presence of the burned chassis only three miles away provided information from which the jury could reasonably infer that one brother had transported and the other had received the whole vehicle.

Here, unlike in the Bishop cases, there is a lack of evidence that defendants received anything but the parts. There is a dearth of evidence that the tractor as a unit ever crossed state lines.

In the first *Bishop* case it was held that the basic inference from the facts present was sufficient to establish the elements of the offense there charged. Thus, there existed a more or less whole vehicle which was in the actual and constructive possession of the accused. It cannot be said from the evidence that defendant possessed a motor vehicle. The deductive process cannot be stretched far enough to allow a jury to infer that the appellant received a stolen motor vehicle. The government's own evidence established at most that the defendant had received certain parts. Accordingly, it would be highly improper to indulge the inference which arises from possession of stolen property.[1]

■ We are cognizant that the federal courts have tended to construe the Dyer Act in broad terms. *See* United States v. Turley, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957).[2] Regardless of the breadth of interpretation, transportation or receipt of parts alone has not been held to be sufficient. The *Bishop* cases, *supra*, recognize this. At the same time, we make clear our position that a person cannot avoid prosecution and conviction by the simple subterfuge of taking a vehicle apart.[3]

■ The government also complains that the defendant-appellant failed to raise this issue at trial and failed to object to the instructions as well. The government asserts that this constitutes a waiver. We recognize that failure to object to instructions bars the appellant from raising objections on appeal. Rule 30, Fed.Rules Crim.Proc. But where an error is plain, notice may be taken of it under Rule 52, and the failure of the evidence to satisfy the statutory definition here is of sufficient plainness and magnitude to justify its now being considered.

■ In sum, then: appellant was indicted for receiving and concealing a

---

1. The *Bishop* court said in part:

   Similarly, the unexplained possession of a stolen vehicle in a state to which it has been recently transported is sufficient evidence upon which a jury may infer that the possessor participated in the interstate transportation of the vehicle. Rogers v. United States, *supra* [10 Cir., 416 F.2d 926]; Prince v. United States, *supra* [6 Cir., 217 F.2d 838]. And finally, the false explanation of possession of stolen property gives rise to similar inferences. Indeed it has been held that "fabrication of evidence of innocence is cogent evidence of guilt." Harvey v. United States, 94 U.S. App.D.C. 303, 215 F.2d 330, 332 (1954); United States v. Reed, 414 F.2d 435, 438 (5th Cir. 1969); McIntosh v. United States, 341 F.2d 448, 457 (8th Cir. 1965); Koury v. United States, 217 F.2d 387, 388 (6th Cir. 1954). 434 F.2d at 1286–87.

2. In *Turley* the Court held that "stolen" included all felonious takings with intent to deprive of ownership, whether or not the taking constituted common law larceny. The Court indicated that the statute should be given an interpretation consistent with Congressional policy to halt interstate traffic in vehicles stolen by any means.

3. *See* United States v. Stettmeier, 465 F.2d 436 (9th Cir. 1972) (Defendant bought a plane, knowing it was stolen, replaced some of its vital parts and then transported it from New Mexico to Arizona. The court held it was sufficient to show that major parts of the plane were stolen.); United States v. Abigando, 439 F.2d 827 (5th Cir. 1971) (A car was stolen in New Orleans and recovered in Florida from a person who obtained it from defendant, and who said it had no engine when he received it. The defendant had, however, confessed to stealing the car in New Orleans and driving it to Florida. It was a "motor vehicle" at the time of transportation.); United States v. Sutt, 415 F.2d 1305 (7th Cir. 1969) (Defendant's conviction for receipt of a stolen vehicle was upheld where the evidence showed he sold the top and back of the car, the transmission was found in in a witness's garage just after defendant had used it, and defendant acknowledged ownership of the engine to another witness.).

   *Compare,* United States v. Lofty, 455 F.2d 506 (4th Cir. 1972) (Defendant was convicted for receiving a motor vehicle and for receiving stolen goods. The "goods" consisted of the trailer coupled to the truck tractor received by defendant. The court said the trailer was not part of the motor vehicle because it was not self-propelled.); United States v. Wooten, 239 F.Supp. 123 (E.D.Tenn.1965) (Defendant could not be convicted under the Dyer Act where he put the body alone of a stolen car on the frame of a legitimately purchased car. The body alone cannot be a motor vehicle.)

White semi-tractor, knowing it to have been stolen. The evidence showed only receipt of certain parts of the stolen tractor. It was undisputed that the parts alone did not constitute a self-propelled vehicle. There was no showing of the receipt or concealment of a motor vehicle as defined by the statute.

Defendant also argues that the evidence was insufficient. We need not consider this question.

The judgment is reversed and the cause is remanded with instructions to dismiss the cause.